**Brenda NANOSKI, Appellant,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION and General Motors Corporation, Appellees.**

**No. 88–1771.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1989.

Decided May 9, 1989.

Rehearing and Rehearing En Banc Denied June 29, 1989.

Dennis J.C. Owens, Kansas City, Mo., for appellant.

Robert J. Harrop, Kansas City, Mo., for appellees.

Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

PER CURIAM.

Brenda Nanoski appeals from the district court's [1] entry of judgment following a jury verdict in favor of General Motors Corporation (GM) and General Motors Acceptance Corporation (GMAC) on Nanoski's Title VII racial discrimination claim, and from the district court's entry of judgment *non obstante veredicto* after the jury awarded Nanoski $29,748.46 on her breach of contract claim. We affirm.

Nanoski, a black woman, was employed by GM, first as a keypunch operator and later as a clerical worker, from 1971 until 1978 when she was laid off. When laid off, she was given a choice of either transferring from Kansas City to Chicago or having her name placed on a "layoff list" which would allow her to be recalled when an opening at GM became available. She chose the latter option and was told that she would not need to apply for employment at other GM facilities because the layoff list would serve that purpose, and that by having her name on the list she would receive preferential treatment over applicants not on the list.

Sometime after being laid off, Nanoski obtained a temporary position at a GM zone office by contacting a woman in the GM data processing department. She then was laid off a second time. There is some conflict in the record as to whether this termination took place because of a poor

---

1. The Honorable D. Brook Bartlett, United States District Judge, Western District of Missouri.

attendance record or because of the temporary nature of the assignment.

In April, 1983 Nanoski applied for a position at GMAC requiring typing and stenographic skills, but GMAC hired a white woman who had not been previously employed by GM, but who had six years of secretarial experience. Nanoski then contacted the personnel department at GM and was informed that her name was not on any layoff lists prepared by GM. Nanoski brought suit against both GM and its wholly-owned subsidiary GMAC alleging racial discrimination in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e–17, and breach of contract.

Nanoski proceeded pro se during the discovery and trial phases of the litigation.[2] A jury trial resulted in a verdict of $29,748.46 for Nanoski on the breach of contract claim and a verdict for defendants GM and GMAC on the race discrimination claim. However, the jury instructions required the jury to find for Nanoski if it believed, *inter alia*, that she "was damaged as a direct result of General Motors Corporation's failure to do what it promised." Because no evidence was submitted by Nanoski showing that she was damaged, the district court granted JNOV.

On appeal, Nanoski argues that the district court erred in (1) granting JNOV; (2) admitting evidence which had been sought by Nanoski during discovery, but not produced by GM until trial; and (3) allowing a witness who had been present in the courtroom during the testimony of adverse witnesses to comment on that prior testimony when Fed.R.Evid. 615 had been invoked to exclude potential witnesses from the courtroom.

JNOV is proper only when "all the evidence points one way and is susceptible of no reasonable inference sustaining the position of the non-moving party." *Sunkyong Int'l, Inc. v. Anderson Land and Livestock Co.*, 828 F.2d 1245, 1248 (8th Cir. 1987). The record shows that Nanoski prevailed against her legally-trained adversary in persuading the jury that GM made her a promise, that she relied on that promise, and that GM failed to keep its promise. However, as an essential element of her claim, Nanoski also had to prove that she was harmed by this breach. *See Pasquel v. Owen*, 186 F.2d 263, 271 (8th Cir.1950); *Equity Mutual Ins. v. Affiliated Parking, Inc.*, 448 S.W.2d 909, 913 (Mo.Ct.App.1969). Specifically, in this case, Nanoski had to prove that by breaching its promise to put Nanoski's name on a layoff list, GM failed to consider her for a position for which she was qualified.

■ The only evidence provided by Nanoski was that some of her co-workers, who had been laid off with her, were subsequently rehired from a layoff list. However, there is no indication that any of these individuals were hired to fill a position for which Nanoski was qualified. Furthermore, even assuming *arguendo* that Nanoski was qualified for the GMAC position,[3] the record shows that GMAC does not utilize the layoff lists of its parent GM, so that Nanoski would not have been given preference had she been on the list. We conclude that Nanoski failed to prove that GM had an opening for which she was qualified and for which she was not preferentially considered because of GM's breach.

■ We also reject Nanoski's remaining arguments. The record shows that the witness who was allowed to testify after having remained in the courtroom during prior witness's testimony had been designated at trial as GM's corporate representative. An officer or employee of a party who has been designated as that party's representative is not excludable. Fed.R.Evid. 615.

■ Last, although Nanoski asserts that the document admitted at trial as Exhibit 65 was sought but not delivered during discovery, it is apparent that the document was merely an extrapolation of information contained in Exhibits 28 through 50, showing the status of employees who had been laid off. While arguably cumulative, *see* Fed.R.Evid. 403, Nanoski did not object to

---

2. On appeal, Nanoski was represented by court-appointed counsel.

3. We note that Nanoski admitted at trial that she lacked typing and stenographic skills.

the admission of the exhibit during trial, nor does she indicate now how its admission was prejudicial. Accordingly, we affirm.